NORTHERN DISTRICT OF TEXAS
FILED

JAN 18 2013

CLERK, U.S. DISTRICT COURT
By_____
                Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| DARILENE W. BENAVIDES, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-859-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

Plaintiff Darilene W. Benavides ("Benavides") filed this *pro se* action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Benavides applied for SSI on August 28, 2009, alleging that her disability began on January 1, 2007. (Tr. 117–22.)

After her application for benefits was denied initially and on reconsideration, Benavides requested a hearing before an administrative law judge ("ALJ"). (Tr. 58–59, 74–75.) The ALJ held a hearing on December 2, 2010, and issued an unfavorable decision on December 22, 2010. (Tr. 15–29.) On November 1, 2011, the Appeals Council denied Benavides' request for review,

leaving the ALJ's decision as the final decision of the Commissioner in this case.  (Tr. 1–6.)

Benavides subsequently filed this civil action seeking review of the Commissioner's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.   In

addition, numerous regulatory provisions govern SSI benefits.  *See* 20 C.F.R. Pt. 416 (2012).

The SSA defines a "disability" as a "medically determinable physical or mental impairment"

lasting at least twelve months that prevents the claimant from engaging in "any substantial

gainful activity."  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152,

154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to benefits, a five-step

analysis is employed.  20 C.F.R. § 416.920(a)(4).  First, the claimant must not be presently

working at any substantial gainful activity.  *Id.* § 416.920(b).  "Substantial gainful activity" is

defined as work activity "that involves doing significant physical or mental activities . . . for pay

or profit."  *Id.* § 416.972.  Second, the claimant must have an impairment or combination of

impairments that is severe.  *Id.* § 416.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th

Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be

found if the impairment or combination of impairments meets or equals an impairment contained

in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §

416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status

alone, the impairment or impairments must prevent the claimant from returning to her past

relevant work.  *Id.* § 416.920(f).  And fifth, the impairment must prevent the claimant from doing

any work, considering the claimant's residual functional capacity, age, education, and past work

experience.  *Id.* § 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations.   20 C.F.R. § 416.920(a)(4).   The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 416.920(e).  At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work.   At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla, but less than a preponderance. *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III.  ISSUES

Benavides' *pro se* brief generally challenges the Commissioner's decision to deny

benefits by listing the following complaints:

1.   Benavides is very sick with a combination of impairments;

2.   Benavides cannot perform her past work; and

3.   Benavides cannot perform any other work.

(Pl.'s Br. 1.)

### IV.  ALJ DECISION

In his December 22, 2010 decision, the ALJ concluded that Benavides was not disabled

within the meaning of the SSA.  (Tr. 25.)  In making his determination, the ALJ proceeded to

follow the five-step sequential evaluation process.   At the first step, the ALJ found that

Benavides had not engaged in any substantial gainful activity since the application date, August

28, 2009.  (Tr. 20.)  At the second step, the ALJ found that Benavides had the following severe

impairments: fibromyalgia, chronic obstructive pulmonary disease ("COPD"), patellar bursitis of

the left knee, osteoporosis, bronchitis, asthma, obesity, and bipolar disorder.[1]  (Tr. 20.)   At the

third step, the ALJ found that Benavides' severe impairments did not meet or equal in severity to

an impairment contained in the Listing.  (Tr. 20.)

The ALJ then assessed Benavides' RFC as follows:

> [Benavides] has the residual functional capacity to maintain employment at the
> level of lifting and carrying 20 pounds occasionally and 10 pounds frequently;
> standing and walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour
> workday; and avoid concentrated exposure to dust, gas, fumes, and poor
> ventilation . . . . Furthermore, [Benavides] is limited to simple[,] routine work.

---

[1] The ALJ also found that Benavides had been clinically assessed with gastroesophageal reflux disease
("GERD") and possible restless leg syndrome but that these impairments were nonsevere. (Tr. 20.)

(Tr. 21.)  Next, at the fourth step, the ALJ found that Benavides was capable of performing her

past relevant work as a telephone solicitor, fast-food worker, waitress, and receptionist.  (Tr. 24.)

Thus, the ALJ found that Benavides had not been under a disability at any time since the date

that her application for SSI was filed.  (Tr. 25.)

## V.   DISCUSSION

### A.   Benavides' Medically Determinable Impairments

In her first issue, Benavides asserts that she is "very sick with a comb[ination] of things"

and lists the following impairments: (1) severe fibromyalgia; (2) GERD; (3) arthritis of the neck,

knees, and back; (4) bronchitis; (5) COPD; (5) a meniscus tear of the left knee that needs

surgery; (5) bipolar disorder; and (6) headaches.  (Pl.'s Br. 1.)  The ALJ's decision includes

many of these impairments in the list of impairments that the ALJ found to be severe.  However,

the ALJ specifically found that Benavides' GERD was not severe, and he did not mention

arthritis, meniscus tear, or headaches in the list of Benavides' severe impairments.  (Tr. 20.)

Accordingly, the Court will examine the ALJ's decision to determine whether the Commissioner

applied the correct legal standards in evaluating the medical evidence and whether the decision is

supported by substantial evidence in the record as a whole.  *See Leggett*, 67 F.3d at 564; *Hollis*,

837 F.2d at 1382.

### 1.   New Evidence

First, the Court notes that Benavides attached the following documents to her brief: (1) a

document titled "Request for C/S Services" apparently showing that Asfia Sayeed, M.D. ("Dr.

Sayeed") ordered Benavides a cane on February 17, 2011; (2) a December 22, 2011 letter from

Chandrakant Patel, M.D. ("Dr. Patel") stating that Benavides had been a patient of Tarrant

County Mental Health Mental Retardation since 2010 and opining that Benavides was

permanently unable to work due to her bipolar disorder; (3) a November 29, 2011 letter from Dr.

Sayeed opining that, because Benavides' fibromyalgia caused her to have "good days and bad days," she was having difficulty working; and (4) an undated, handwritten list of medications and dosages.

By attaching these documents to her brief, Benavides appears to be arguing that the above-described records are "new and material" evidence, and, thus, require the Court to remand the case for consideration of this evidence. "When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citing 42 U.S.C. § 405(g) and *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). The Court does not issue factual findings on new medical evidence but determines only whether to remand for the consideration of the newly presented evidence. *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989).

"To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings." *Ripley*, 67 F.3d at 555. To be new, the evidence must not be merely cumulative of the evidence already in the administrative record. *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For evidence to be material, it must relate to the time period for which disability benefits were denied, and there must be a reasonable probability that the new evidence would change the outcome of the Commissioner's decision. *Ripley*, 67 F.3d at 555; *see Sullivan*, 884 F.2d at 803.

First, as to the request for a cane, this record is dated after the date of the ALJ's decision, December 22, 2010. It is not relevant to the time period for which Benavides seeks disability benefits and, thus, is not material. *See Ripley*, 67 F.3d at 555; *see also Dashti v. Astrue*, No. 4:11-CV-196-A, 2012 WL 1624150, at *6–7 (N.D. Tex. Apr. 9, 2012), *adopted in* 2012 WL

1624070 (N.D. Tex. May 4, 2012).  The new letters from Dr. Sayeed and Dr. Patel are both dated late 2011, so they also postdate the Commissioner's decision.  Neither letter clearly indicates whether it applies to Benavides' current condition as of the date of the letter or to Benavides' earlier condition during the relevant time period.  But even assuming that the letters are evidence of Benavides' earlier condition during the relevant time period, Benavides has not shown good cause for her failure to obtain and submit such evidence to the ALJ.  Dr. Patel's letter states that Benavides has been an MHMR patient since 2010, and the record shows that Benavides has been a patient at Dr. Sayeed's clinic since at least 2009.  (Tr. 235–47, 259–71.)  Therefore, Benavides could have obtained both Dr. Patel's and Dr. Sayeed's opinions much earlier than November/December 2011.

As for the undated list of medications, to the extent that they are not cumulative of evidence already in the administrative record, the Court finds that Benavides also has not demonstrated good cause for failing to submit such evidence during the administrative proceedings.  Evidence of medications that Benavides was taking during the relevant time period would have been available to Benavides and in existence long before the ALJ rendered his decision on December 22, 2010.  In fact, Benavides did submit to the ALJ a detailed list of the medications that she was taking at the time of the hearing.  (Tr. 215–18.)  To the extent that this list reflects medications taken after December 22, 2010, it is not relevant to the time period for which Benavides seeks disability benefits and, thus, is not material.  *See Ripley*, 67 F.3d at 555; *Dashti*, 2012 WL 1624150, at *6–7.

Finally, Benavides alleges that she has "new cond[itions]": heart impairment, lung impairment, back impairment, obesity, impairment of a disc in her lower back, and walking with a cane.  (Pl.'s Br. 2.)  Again, however, evidence of new or deteriorating conditions developing after the ALJ's decision do not relate to the time period for which disability benefits were sought

and, thus, are not material. *See Ripley*, 67 F.3d at 555; *see also Joubert v. Astrue*, 287 F. App'x 380, 384 (5th Cir. 2008). Because Benavides has failed to meet her burden as to the submission of the allegedly new and material evidence, the Court concludes that remand on this ground is not required.

### 2.    Mental Impairment

At step three, the ALJ evaluated the evidence relating to Benavides' bipolar disorder under the "technique" and concluded that she had mild limitations in activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace, and no episodes of decompensation.[2] (Tr. 21.) Accordingly, the ALJ concluded that the severity of Benavides' bipolar disorder did not rise to the level of an impairment on the Listing. (Tr. 20–21.)

When evaluating evidence of a claimant's impairments, an ALJ gives controlling weight to a treating source's opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 416.927(c)(2). If the ALJ does not give the treating source's opinion controlling weight, he must apply the factors listed in section 416.927(c) to determine what weight to give to

---

[2] The "technique" is a set of mandatory steps that the regulations require an ALJ to follow when evaluating the severity of mental impairments in claimants. 20 C.F.R. § 416.920a(a). The ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 416.920a(b)(1). The ALJ next must evaluate the degree of functional loss resulting from the claimant's mental impairments in four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. 20 C.F.R. § 416.920a(c)(3). The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. 20 C.F.R. § 416.920a(c)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 416.920a(d). The regulations contain a presumption that if the claimant's degree of limitation is rated as none or mild in the first three functional areas and as none in the fourth area, the ALJ will generally conclude that the claimant's mental impairment is not severe. 20 C.F.R. § 416.920a(d)(1). However, this presumption may be rebutted if "the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1).

the opinion, as well as the opinions of a State agency medical or psychological consultant and other nontreating sources. *Id.* §§ 416.927(c)(2), 416.927(f)(2).[3]

The ALJ's review of the medical evidence relating to Benavides' bipolar disorder reflects that Benavides was diagnosed with bipolar disorder by Peter Holm, M.D. ("Dr. Holm") at an independent medical exam on December 9, 2009. (Tr. 23, 249–51.) Benavides reported at the exam that medications were not helpful, but Dr. Holm noted that Benavides had "never been treated as yet with a mood stabilizer." (Tr. 251.) Dr. Holm observed that Benavides was "mildly fidgety but cooperative and alert. Her speech was unremarkable and fluent. Eye contact was adequate. Her thinking was logical, coherent, and relevant without looseness of associations. There were no suicidal ideation[s] and no history of psychosis." (Tr. 23, 250.) Accordingly, the ALJ concluded that the evidence failed to show that Benavides' symptoms prevented all work-related activities. (Tr. 23.) The ALJ also noted that Dr. Holm had assigned Benavides a GAF score of 45.[4] (Tr. 23, 251.) However, the ALJ found that the GAF score was "inconsistent with the medical evidence as a whole, which shows a higher level of functioning." (Tr. 24.)

The ALJ also reviewed opinion evidence by Dr. Patel, the MHMR psychiatrist, dated August 18, 2010. (Tr. 23, 316–17.) Although the ALJ observed that Benavides had never been hospitalized for any mental impairment, Dr. Patel stated that Benavides had experienced repeated episodes of decompensation of extended duration. (Tr. 23, 317.) Dr. Patel opined that Benavides had extreme difficulties in maintaining social functioning as well as marked

---

[3] These factors are (1) whether the source examined the claimant; (2) whether the source treated the claimant, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship; (3) the medical signs and laboratory findings that support the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or nonspecialist; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 416.927(c).

[4] The Global Assessment of Functioning (GAF) scale rates psychological, social, and occupational functioning on a scale of 0 to 100. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. text rev. 2000) [hereinafter "*DSM-IV-TR*"]. A GAF code of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

limitations in the following: (1) activities of daily living; (2) ability to maintain concentration, persistence, or pace; (3) ability to understand, carry out, and remember simple instructions; (4) ability to respond appropriately to supervision, coworkers, and usual work situations; and (5) ability to deal with changes in a routine work setting. (Tr. 23–24, 316–17.) Dr. Patel also opined that Benavides could not work a full eight-hour workday. (Tr. 24, 317.) The ALJ did not give controlling weight to Dr. Patel's opinion but instead gave it "very little" weight because it was inconsistent with the medical evidence as a whole and because Dr. Patel "apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Benavides]." (Tr. 24.) *See id.* §§ 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion."), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight [the Commissioner] will give to that opinion.").

Dr. Patel's treatment notes show that, at Benavides' initial exam on January 7, 2010, Dr. Patel observed that Benavides' mood was depressed and her attention was impaired. (Tr. 397.) However, Dr. Patel also observed that Benavides was well-groomed, cooperative, alert, and orientated. She had an appropriate affect, normal speech, and intact judgment and thought processes. She had no hallucinations or delusions, was not suicidal or homicidal, and had no memory problems. (Tr. 397.) Subsequent progress notes from March 12, 2010 to October 29, 2010, report that Benavides was agitated, anxious and irritable, and depressed and dysphoric. (Tr. 360, 369, 376, 410.) But Dr. Patel also consistently observed that Benavides was

10

appropriately groomed, cooperative, and alert, with intact thought processes and normal content.[5]

He generally rated the severity of her symptoms as moderate or less.[6]   (Tr. 360, 369, 376, 410.)

On the whole, the ALJ's decision shows that he reviewed the evidence relating to

Benavides' mental impairment and, as he was required to do, explained his reasoning underlying

his decision not to give controlling weight to the opinion of the treating physician, Dr. Patel.

Ultimately, the ALJ concluded that Dr. Patel's opinion of extreme and marked mental limitations

was not supported by the medical evidence in the record.   Given the content of Dr. Patel's own

treatment notes and the exam findings of Dr. Holm as discussed above, the Court cannot say that

no credible evidentiary choices or medical findings support the ALJ's conclusion.   *See Boyd*, 239

F.3d at 704.   Consequently, the Court finds that the ALJ's decision is supported by substantial

evidence, and remand on this issue is not required.   *See Martinez v. Chater*, 64 F.3d 172, 176

(5th Cir. 1995) (stating that the ALJ "is free to reject the opinion of any physician when the

evidence supports a contrary conclusion"); *see also Leggett*, 67 F.3d at 566 (stating that "the ALJ

can decrease reliance on treating physician testimony for good cause," including statements "that

are brief and conclusory . . . or otherwise unsupported by the evidence").

### 3.   Physical Impairments

The physical impairments of which Benavides complains that the ALJ found to be severe

are COPD, bronchitis, and fibromyalgia.   (Pl.'s Br. 1.)   At step three, the ALJ compared

Benavides' pulmonary impairments to the Listing and concluded that the medical records lacked

the clinical findings necessary to meet the criteria for disability either due to COPD or chronic

pulmonary insufficiency.   (Tr. 20.)   The ALJ documented his review of the relevant medical

---

[5] Only one progress note, dated May 27, 2010, records delusional thought content.   (Tr. 369.)

[6] The May 27 and August 18, 2010 progress notes assign a rating of six to some symptoms on a scale of zero to ten (0 = no symptoms, 5 = moderate, and 10 = extreme).   (Tr. 360, 369.)   Otherwise, Dr. Patel rated Benavides' symptoms at a five or lower.   (Tr. 396, 410.)   In fact, on October 29, 2010, Dr. Patel rated her symptoms at a two.

evidence, including a December 11, 2009 internal medicine consultative examination resulting in clinical impressions of asthma as a teenager, COPD, obesity with a BMI of 40, and a recent episode of pneumonia.[7]  (Tr. 22, 256.)  Benavides reported that she smoked one pack of cigarettes per day.  (Tr. 253.)  The consultative examiner noted that a November 12, 2008 x-ray report showed no evidence of acute cardiopulmonary disease.  (Tr. 256.)  Findings from chest x-rays taken December 14, 2009, showed that "[t]he heart size is normal and the lungs are free of infiltrates.  There is no evidence of a pleural effusion."  (Tr. 258.)  The impression was "[n]o active disease identified in the chest."  (Tr. 258.)  The ALJ noted that there was no evidence of frequent emergency room visits or hospitalizations due to Benavides' COPD, bronchitis, or asthma.  (Tr. 23.)  Thus, the ALJ concluded that Benavides' subjective allegations regarding her symptoms and limitations were "at least somewhat exaggerated as they are not wholly consistent with the clinical findings."  (Tr. 23.)  The ALJ's discussion of Benavides' fibromyalgia is less extensive, but he recognized that recent medical records showed treatment and medication prescribed for her condition.  (Tr. 22.)

Benavides also complains that she suffers from GERD, arthritis, a meniscus tear of the left knee that needs surgery, and headaches.  The ALJ did not, however, include these conditions in his list of severe impairments.  The ALJ recognized that Benavides had been clinically assessed with GERD, but he did not find that her GERD would be expected to interfere with her ability to work.  Benavides points to no evidence in the record showing otherwise.  *See Stone*, 752 F.2d at 1101.  Benavides also does not point to evidence in the record showing diagnoses or observations of arthritis and headaches, much less that these claimed impairments affected her ability to work.

---

[7] The consultative examiner also recorded the following additional clinical impressions: GERD, patellar bursitis of the left knee, osteoporosis by history, bipolar disease with anxiety, and possible restless leg syndrome. (Tr. 22, 256.)

As for Benavides' claimed meniscus tear of the left knee, Benavides alleges that it requires surgery but does not support this allegation with any medical evidence. In fact, the ALJ noted that the consultative examiner observed full flexion and extension of the knees. (Tr. 22, 255.) Benavides was able to walk without assistance and stand and sit without difficulty, although "[s]he did have an episode where she came out of the examining room and almost tended to buckle because of left knee discomfort." (Tr. 256.) The ALJ also noted that a July 12, 2010 MRI of the left knee showed a "*questionable* nondisplaced tear of the medial meniscus posterior horn versus instrasubstance degeneration." (Tr. 23, 335) (emphasis added). The ALJ noted that nothing in the medical records showed that she had been prescribed a cane, walker, or wheelchair during the relevant time period. (Tr. 23.)

Based on the foregoing, the Court finds that the ALJ did not err in concluding that Benavides failed to carry her burden of proof to show that her impairments were disabling. The ALJ properly applied the correct legal standards, and his decision is supported by substantial evidence in the record as a whole. *See Leggett*, 67 F.3d 564; *Hollis*, 837 F.2d 1378. Thus, remand on Benavides' first issue is not required.

### B.   Benavides' Past Work

In her second and third issues, Benavides argues that she has not worked since 2009 and cannot perform any of her past work. She asserts that she has been living with family since 2009 and that she cannot work to get an apartment or car for herself, pay co-payments on her bills, or get her own medications. (Pl.'s Br. 1.) The ALJ assessed Benavides' RFC as follows: She could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday, provided that she avoided concentrated exposure to dust, gas, fumes, and poor ventilation, and was limited to simple, routine work. (Tr. 21.) Based on this RFC, the ALJ found at step four that Benavides could

13

perform her past relevant work as a telephone solicitor, fast food worker, waitress, and receptionist. (Tr. 24.) Benavides argues that this finding was erroneous because she cannot stand or sit for long periods of time and cannot walk far. (Pl.'s Br. 1.)

However, Benavides points to no medical evidence in the record contradicting the ALJ's findings regarding her ability to sit, stand, and walk. The ALJ's decision provides an appropriate review of the medical records, and the Court finds that it demonstrates substantial evidence supporting the ALJ's RFC assessment. As previously mentioned, Benavides underwent an internal medicine consultative exam on December 11, 2009, which showed that she had no evidence of acute cardiopulmonary disease or any active disease identified in the chest. (Tr. 256, 258.) She had full flexion and extension of the knees and was able to walk without assistance and stand and sit without difficulty. (Tr. 22, 255.) The consultative exam also showed that Benavides had some discomfort in the intrapatellar region suggesting patellar bursitis, but she also had normal limb length. There was no evidence of edema or atrophy. Pulses were present distally, and muscle tone in the lower extremities was 5/5. (Tr. 22, 255.) The consultative examiner recorded that Benavides had a mild antalgic gait because of pain in her left knee and both feet. (Tr. 255.) Although complaining of foot pain, she was able to tiptoe and heel stand minimally. Exam of the back showed that Benavides hyperextended 15 to 20 degrees and flexed 80 to 85 degrees. Right and left lateral flexion was 15 to 20 degrees. The straight leg raising test was negative bilaterally. (Tr. 255.) Deep tendon reflexes were 2+ bilaterally in the ankles, knees, and upper extremities, and Benavides had no loss of sensation to sharp pain or soft touch. (Tr. 256.)

Also as previously mentioned, the ALJ noted that recent medical records showed treatment and prescribed medication for Benavides' fibromyalgia. (Tr. 22.) The transcript contains medical records from John Peter Smith Hospital showing Benavides' visits for

fibromyalgia treatment and her complaints of pain, but Benavides does not point to any evidence in these records documenting any limitations observed or restrictions imposed on her activities by the medical personnel. The ALJ noted that a July 7, 2010 MRI of the left knee showed a "questionable nondisplaced tear of the medial meniscus posterior horn versus instrasubstance degeneration," but he also noted that nothing in the medical records showed that she had been prescribed a cane, walker, or wheelchair during the relevant time period. (Tr. 23, 335.)

Furthermore, the State agency medical consultant opined, consistent with the ALJ's assessment, that Benavides could carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour workday. (Tr. 24, 291, 299.) Although the ALJ is not bound by findings made by State agency consultants, they are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," and the ALJ must consider their findings and opinions as evidence in making his disability determination. 20 C.F.R. § 416.927(e)(2)(i).

Based on the foregoing, the Court finds that the ALJ's RFC assessment is supported by credible evidentiary choices and medical findings in the record. *See Boyd*, 239 F.3d at 704. A vocational expert testified at the hearing that Benavides' past jobs were either light or sedentary, with skill levels of either unskilled or semiskilled. With this testimony, the ALJ found that Benavides' RFC showed that she could perform the physical and mental demands of her past work. (Tr. 24.) The Court finds no error in this determination. Because the ALJ applied the correct legal standards in evaluating the medical evidence and his decision is supported by substantial evidence in the record as a whole, remand is not required. *See Leggett*, 67 F.3d at 564; *Hollis*, 837 F.2d at 1382.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until February 1, 2013, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 18, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE